*1069 OPINION
By the Court,
Young, J.:
Appellant Garland Washington (“Washington”) was convicted, pursuant to a jury verdict, of one count of sexual assault. The conviction stems from an incident which occurred on June 29, 1993, in which Washington sexually assaulted his fifteen-year-old stepsister. After the jury’s verdict, the district court imposed the following sentence: twenty years in the Nevada State Prison, $1,000.00 restitution payable to the Clark County Sexual Abuse Compensation Fund, restitution to the victim for future counselling costs, and a $25.00 assessment fee.
Washington appeals his conviction, arguing that (1) the prosecution violated Washington’s Sixth and Fourteenth Amendment rights by using its only peremptory challenge to eliminate an African-American venireperson on the basis of race; (2) the prosecution engaged in reversible misconduct by indirectly commenting on Washington’s Fifth Amendment right to remain silent and by indirectly implying that Washington had the burden of proof during the course of the proceedings; (3) the prosecution engaged in reversible misconduct by interjecting its personal beliefs and factual matters outside the record into its closing argument; (4) the prosecution engaged in reversible misconduct by introducing into evidence other crimes committed by Washington to prove character; (5) the prosecution engaged in reversible misconduct by presenting the details and circumstances of Washington’s prior criminal activity to impeach his credibility even though he did not testify; and (6) the district judge committed prejudicial error by presiding over the trial in a biased manner.

Peremptory challenge

Pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), Washington, an African-American, argues that the State’s peremptory challenge of a male African-American venireperson violated his Sixth and Fourteenth Amendment rights.
In the present case, the following dialogue transpired when the *1070 State was using its peremptory challenge to exclude the only male African-American venireperson:
THE COURT: All right. The State’s next peremptory challenge.
MR. KEPHART [PROSECUTION]: Yes, your Honor, we’d like to thank and excuse Juror Number 11, Michael Wilson.
MS. KIRK-HUGHES [DEFENSE COUNSEL]: Your Honor, pursuant to Batson, I’d like to know what the prosecutor’s neutral reasons are for excusing that juror.
MR. KEPHART: Your Honor, no offense to him, but basically he’s a cook here in Las Vegas, he’s married and he has no children. I don’t see any — there is no reason — I mean the only reason they’re asking is because he is black. That’s the only question. And my position is that it’s neutral in reference to his education, his job, and the fact that he doesn’t have any children . . . I’m going to have trouble with that.
THE COURT: And that’s the reason?
MS. KIRK-HUGHES: Your Honor, the defendant in this case is black and under Batson he’s entitled to a cross-section of the jury panel. We only have two other members of the jury panel that are black. We have excused the only black male on the panel. And I don’t think that the reason that the prosecutor has offered is neutral under Batson.
MR. KEPHART: Your Honor, they need to demonstrate that I systematically was excluding blacks from the case and I don’t think I’ve done that.
THE COURT: Your objection is noted for the record and thank you for making the objection. It’s noted and it’s preserved. But I’ll overrule it.
In Purkett v. Elem, ..... U.S. ....., 115 S. Ct. 1769 (1995), the
United States Supreme Court clarified the manner in which courts are to analyze Batson challenges. The Purkett court stated:
Under our Batson jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination.
Id. at ....., 115 S. Ct. at 1770-71 (citations omitted).
*1071 Assuming that a prima facie case of racial discrimination existed, we conclude that the prosecutor’s prolfered race-neutral reasons satisfy the United States Supreme Court’s express mandate in Purkett. In Purkett, the Court stated that “[t]he second step of this process does not demand an explanation that is persuasive, or even plausible.” Id. at ....., 115 S. Ct. at 1771. The Purkett Court further stated that “ ‘[u]nless a discriminatory intent is inherent in the prosecutor’s explanation, the reason offered will be deemed race neutral.’ ” Id. (quoting Hernandez v. New York, 500 U.S. 352, 360 (1991)). We conclude that a discriminatory intent was not inherent in the prosecutor’s explanation that he wanted to excuse the African-American juror due to his job, education and lack of children. Accordingly, we deem the prosecutor’s explanation race-neutral. Furthermore, we conclude that the district court did not abuse its discretion when, at step three of the Batson analysis, it overruled Washington’s objection to the State’s peremptory challenge.

Right to remain silent and burden of proof

Washington next argues that the State committed reversible error by commenting on his right to remain silent and by indirectly implying that he had the burden of proof instead of the State. Specifically, Washington notes that during the prosecutor’s opening statement, he stated that the “defense has their own theories and they are certainly going to try to convince you that their theories are what happened.” In the same opening statement, the prosecutor stated that “now you’re going to hear the defense — well, I don’t know if you will or not, but I’m not here to go into a month long custody battle between the parents in this case, the mother and the father.”
We conclude that the State did not commit reversible error by commenting on Washington’s right to remain silent. The prosecutor’s comments in the present case did not portray Washington’s right to remain silent in a negative light nor did they infringe upon Washington’s right to remain silent and refrain from testifying on his own behalf. Murray v. State, 105 Nev. 579, 584, 781 P.2d 288, 291 (1989).
We further conclude that Washington never had the burden of proof in the case at bar. We have stated that “[i]t is a fundamental principle of criminal law that the State has the burden of proving the defendant guilty beyond a reasonable doubt and that the defendant is not obligated to take the stand or produce any *1072 evidence whatsoever.” Barron v. State, 105 Nev. 767, 778, 783 P.2d 444, 451 (1989). In the present case, during the prosecutor’s opening statement, he stated that “it’s the State’s obligation to prove to you that what happened was a crime.” Furthermore, at the conclusion of the evidentiary phase of the trial, the jury was instructed that “[t]he defendant is presumed innocent until the contrary is proved. This presumption places upon the State the burden of proving beyond a reasonable doubt every material element of the crime charged and that the defendant [was] the person who committed the offense.” Accordingly, we conclude that Washington’s argument is without merit.

Prosecutorial misconduct

Washington argues that the prosecutor committed reversible misconduct by interjecting his personal beliefs into his closing argument and by improperly commenting on factual matters outside the record. Specifically, Washington contends that the prosecutor improperly commented on several matters, including Washington’s physical appearance, the source of funding for Washington’s defense, religion, Washington’s prior bad acts, and the prosecutor’s wife being a victim of a previous unrelated assault.
We conclude that several instances of prosecutorial misconduct occurred in the case at bar. We do not condone or promote prosecutorial misconduct in any form or manner. However, we conclude that the prosecutorial misconduct in the present case was not of a magnitude warranting reversal. See, e.g., Murray, 105 Nev. at 584, 781 P.2d at 291; McGuire v. State, 100 Nev. 153, 158-59, 677 P.2d 1060, 1064 (1984). We further conclude that the cumulative effect of these instances of prosecutorial misconduct does not alter our stance that Washington’s case was not prejudiced in respect to a substantial right. See Sipsas v. State, 102 Nev. 119, 125, 716 P.2d 231, 235 (1986); Polito v. State, 71 Nev. 135, 140, 282 P.2d 801, 803 (1955).

Judicial bias

Washington argues that the district judge was biased against him because he refused to accept the State’s plea bargain. Specifically, Washington cites to the following comment which the district judge delivered after the jury returned its verdict:
Young Garland as you were told is doing time on a burglary, he was given probation by a judge. He violated his probation *1073 by selling drugs, robbing, all sorts of things. The Judge had to revoke his probation and he imposed a two-year sentence. He was given a pretty good negotiation on this case. They were going to reduce it to lewdness with a minor, but he saw fit not to take that negotiation and take his chances and go to trial on this. The jury has now spoken.
This court has recognized that a defendant may be denied due process by a biased or hostile judge. See Kinna v. State, 84 Nev. 642, 646-47, 447 P.2d 32, 35 (1968). In the present case, we conclude that the district judge was not biased against Washington and that the district judge adequately ensured Washington’s right to a fair trial. See Collier v. State, 101 Nev. 473, 477, 705 P.2d 1126, 1128 (1985), cert. denied, 486 U.S. 1036 (1989); Kinna, 84 Nev. at 646-47, 447 P.2d at 35. Accordingly, we conclude that this argument lacks merit.

Sufficiency of evidence

The dissent contends that “[t]he most serious defect in this conviction is the victim’s failure to identify her assailant.” The dissent further alleges that “[t]he victim was never able to say that she saw or heard Washington on the night of the assault.” (Emphasis supplied.) We disagree. First, we note that Washington has not challenged the sufficiency of evidence on appeal. Second, we have stated that when the sufficiency of evidence is challenged on appeal, “[t]he relevant inquiry for this Court is ‘whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’” Koza v. State, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We conclude that the dissent inappropriately applies this standard in the present case by overlooking portions of the victim’s testimony at trial and by viewing the evidence in the light most favorable to Washington.
It is well established law in Nevada that a jury may convict an individual of sexual assault based upon the victim’s uncorroborated testimony. Deeds v. State, 97 Nev. 216, 217, 626 P.2d 271, 272 (1981). Furthermore, in a case where there is conflicting testimony presented at trial, it is within the province of the jury to determine the weight and credibility of the testimony. Id. Where there is substantial evidence to support a verdict in a criminal case, we will not disturb the jury’s verdict or set aside the judgment. Id.
*1074 In the present case, the victim testified that she repeatedly told Washington “no” and pleaded with him to stop.[1] Washington responded to this by telling her to “wait a minute,” to wait until he was finished. The victim further testified that Washington ceased the sexual assault when the telephone rang and he answered the telephone. She heard Washington tell the person who was calling that he was busy. The victim further testified that she saw the back of Washington’s head as he exited the bedroom after the sexual assault. Furthermore, the victim testified that on the morning after the sexual assault, Washington told her not to tell anyone about what occurred the previous evening.[2] Accordingly, we conclude that the jury was presented with substantial evidence to support its verdict, and we will not disturb that decision on appeal.[3]

Washington’s sentence

As part of Washington’s sentence, the district court ordered Washington to “pay any future counselling costs for victim.” Although not urged by Washington on appeal, we conclude that this portion of Washington’s sentence violates NRS 176.033(l)(c). See Botts v. State, 109 Nev. 567, 568, 854 P.2d 856, 857 (1993).
NRS 176.033 states, in pertinent part:
1. If a sentence of imprisonment is required or permitted by statute, the court shall:
*1075 (c) If restitution is appropriate, set an amount of restitution for each victim of the offense ....
In Botts, the district court refused to grant appellant a hearing on the exact amount of restitution to be imposed and, instead, required appellant to make restitution to the victim for past and future counselling expenses. Botts, 109 Nev. at 568, 854 P.2d at 857. We concluded that the district court failed to “set an amount of restitution” as required by NRS 176.033(1). Id. at 569, 854 P.2d at 857. The Botts court stated that “[t]he statute contemplates that the district court will set a specific dollar amount of restitution. The statute does not allow the district court to award restitution in uncertain terms.” Id.
In the present case, we conclude the district court erred by failing to set a specific dollar amount of restitution to the victim for future counselling costs.
Accordingly, we affirm the judgment of the district court pertaining to Washington’s term of imprisonment, restitution to the Clark County Sexual Abuse Compensation Fund and assessment fee. We reverse the judgment of the district court pertaining to restitution for the victim’s future counselling costs and remand that matter to the district court for resentencing in accordance with the views expressed in this opinion.
Steffen, C. J., with whom Shearing, and Rose, JJ., concur.

The victim testified that before the sexual assault occurred, she had consumed alcohol and taken medication for her epileptic seizures. The victim further testified that because of the combined effects of the alcohol and medication, she “got real sleepy” and “just passed out.” The victim, whose back was facing the edge of the bed, was awakened by a “fluttering” feeling inside her vagina. The victim tried to move but was unable to because she felt “really weak” as if she just had a seizure.

During cross-examination, the victim testified that Washington could have been referring to the victim and Washington’s indulgence in alcohol, rather than the sexual assault, when he gave her the foregoing admonition. However, where conflicting testimony is presented at trial, we conclude that it is within the province of the jury to determine the weight and credibility of testimony. Deeds, 97 Nev. at 217, 626 P.2d at 272.

Our dissenting colleague mistakenly contends that the victim told her natural mother that the sexual contact between herself and Washington was consensual. In fact, during their testimony at trial, the victim and her natural mother both vehemently denied ever indicating that the sexual contact was consensual. Washington’s mother, the victim’s step-mother, was the only individual who alleged that the sexual contact was consensual.