**130 Nev., Advance Opinion 35**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| STEPHANIE BRASS, AS PERSONAL REPRESENTATIVE FOR RONNIE DANELLE BRASS, Appellant, vs. THE STATE OF NEVADA, Respondent. | No. 56146 **FILED** MAY 29 2014 TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit kidnapping and murder, first-degree kidnapping, and first-degree murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Douglas Smith, Judge.

*Reversed.*

David M. Schieck, Special Public Defender, and JoNell Thomas and Michael W. Hyte, Deputy Special Public Defenders, Clark County, for Appellant.

Catherine Cortez Masto, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and David L. Stanton and Nancy A. Becker, Deputy District Attorneys, Clark County, for Respondent.

BEFORE THE COURT EN BANC.

14-17303

## OPINION

By the Court, DOUGLAS, J.:

In this opinion, we consider whether a judgment of conviction must be vacated and the prosecution abated when a criminal defendant dies while his or her appeal from the judgment is pending. We hold that although a deceased appellant is not entitled to have his or her judgment of conviction vacated and the prosecution abated, a personal representative may be substituted as the appellant and continue the appeal when justice so requires. In this appeal, we reverse the judgment of conviction based on an error during jury selection.

## FACTS

The State charged Ronnie Brass and his brother, Jermaine Brass, as codefendants with burglary, grand larceny, conspiracy to commit kidnapping, first-degree kidnapping, conspiracy to commit murder, and murder with the use of a deadly weapon. Jermaine and Ronnie jointly filed a motion to sever their trials. The district court denied the motion, and the two were tried together.

During voir dire, defense counsel argued that the State violated *Batson v. Kentucky*, 476 U.S. 79 (1986), because it exercised a peremptory challenge to exclude prospective juror no. 173 not based on lack of qualifications, but based on the prospective juror's race. Prior to holding a hearing on Jermaine and Ronnie's *Batson* challenge, the district court excused a number of prospective jurors, including prospective juror no. 173. Subsequently, the district court conducted the *Batson* hearing and—after concluding that the State had race-neutral reasons for its peremptory challenge—denied the defense's *Batson* challenge.

At the conclusion of the trial, the jury found Jermaine guilty on all six counts and found Ronnie guilty on four counts, excluding burglary and grand larceny. The brothers filed separate appeals.

In Jermaine's appeal, this court reversed his conviction and remanded the matter for a new trial based on our conclusion that the district court committed reversible error during the jury selection phase of Jermaine and Ronnie's trial. *See Brass v. State*, 128 Nev. ___, 291 P.3d 145 (2012). Specifically, we held that "[Jermaine and Ronnie] were not afforded an adequate opportunity to respond to the State's proffer of race-neutral reasons [for its peremptory challenge of juror no. 173] or to show pretext because the district court permanently excused juror no. 173 before holding a *Batson* hearing," and that such dismissal of juror no. 173 "had the same effect as a racially discriminatory peremptory challenge because even if [Jermaine and Ronnie] were able to prove purposeful discrimination, they would be left with limited recourse." *Id.* at ___, 291 P.3d at 149. We concluded that reversal of Jermaine's conviction was warranted because the "discriminatory jury selection constitute[d] structural error that was intrinsically harmful to the framework of the trial." *Id.*

On appeal, Ronnie raises the same *Batson* issue. However, after the parties completed briefing in this matter, Ronnie died while in prison. The district court appointed his mother, Stephanie Brass, as his personal representative, and she substituted in as a party to this appeal under NRAP 43. Upon substitution, Stephanie filed a motion to abate Ronnie's judgment of conviction due to his death. Stephanie's motion presents a novel issue in Nevada: Should a judgment of conviction be

vacated and the criminal prosecution abated when a defendant dies while his or her appeal from the judgment of conviction is pending?

## DISCUSSION

There are three general approaches when a criminal defendant dies while his or her appeal from a judgment of conviction is pending: (1) abate the judgment *ab initio*, (2) allow the appeal to be prosecuted, or (3) dismiss the appeal and let the conviction stand. Tim A. Thomas, Annotation, *Abatement of State Criminal Case by Accused's Death Pending Appeal of Conviction—Modern Cases*, 80 A.L.R. 4th 189 (1990). We will discuss each approach in turn.

### *Abatement ab initio*

Abatement *ab initio* is the abatement of all proceedings in a prosecution from its inception. *United States v. Oberlin*, 718 F.2d 894, 895 (9th Cir. 1983). This requires an appeal to be dismissed and the case remanded to the district court with instructions to vacate the judgment and dismiss the indictment or information. *Id.* Courts that apply the abatement *ab initio* doctrine believe that when death deprives a defendant of the right to an appellate decision, justice prohibits that defendant from standing convicted without a court resolving his or her appeal on its merits. *United States v. Moehlenkamp*, 557 F.2d 126, 128 (7th Cir. 1977). Many state courts employ this approach. *See State v. Griffin*, 592 P.2d 372, 372-73 (Ariz. 1979); Thomas, *supra*, 80 A.L.R. 4th at 191.

### *Allow the appeal to continue*

Some jurisdictions have determined that a defendant who dies while pursuing an appeal from a judgment of conviction is not entitled to have the criminal proceedings abated *ab initio*; they instead resolve the

appeal on its merits. *See, e.g., State v. Makaila*, 897 P.2d 967, 969 (Haw. 1995) (citing cases that follow this approach). These courts have rationalized that "'it is in the interest of both a defendant's estate and society that any challenge initiated by a defendant to the regularity or constitutionality of a criminal proceeding be fully reviewed and decided by the appellate process.'" *State v. McDonald*, 424 N.W.2d 411, 414-15 (Wis. 1988) (quoting *Commonwealth v. Walker*, 288 A.2d 741, 742 n.* (Pa. 1972)). Some courts allow the appeal to continue only if a personal representative is substituted for the deceased appellant; *Makaila*, 897 P.2d at 972; *State v. McGettrick*, 509 N.E.2d 378, 382 (Ohio 1987); however, other courts decline to impose this requirement. *See State v. Jones*, 551 P.2d 801, 803-04 (Kan. 1976); *see also McDonald*, 424 N.W.2d at 415.

*Dismiss the appeal and let the conviction stand*

Courts that have dismissed the appeal and let the conviction stand have done so on mootness grounds or out of public policy considerations. *See State v. Trantolo*, 549 A.2d 1074, 1074 (Conn. 1988) (finding that where an appeal would not affect the interests of a decedent's estate, it was moot); *Perry v. State*, 575 A.2d 1154, 1156 (Del. 1990) (finding that there was no real party in interest because a cause of action based upon a penal statute did not survive death, thus the appeal was moot); *State v. Korsen*, 111 P.3d 130, 135 (Idaho 2005) (holding that the provisions of a judgment of conviction related to custody or incarceration are abated upon the death of the defendant during the pendency of a direct appeal, but provisions of the judgment of conviction pertaining to payment of court costs, fees, and restitution remain intact because those provisions were meant to compensate the victim); *Whitehouse v. State*, 364

 

N.E.2d 1015, 1016 (Ind. 1977) (finding that the right to appeal was personal and exclusive to the defendant and that any civil interests of third parties may be separately litigated).

*The appeal shall continue*

The abatement *ab initio* and outright dismissal approaches are extreme and have substantial shortcomings. Vacating the judgment and abating the prosecution from its inception undermines the adjudicative process and strips away any solace the victim or the victim's family may have received from the appellant's conviction. Outright dismissal could prevent a defendant's family from potentially clearing a loved one's name. And both approaches would preclude this court from correcting a deprivation of an individual's constitutional rights. Although the appellant is deceased, rectifying a constitutional error nevertheless benefits society because it decreases the chances that another person would fall victim to the same error.

We now adopt the position articulated in *Makaila* and allow a deceased criminal defendant's direct appeal to continue upon proper substitution of a personal representative pursuant to NRAP 43 when justice so requires.[1] This approach allows all parties to present arguments, and then, the court can make an informed decision regarding the validity of the deceased appellant's conviction. Further, a challenge to

---

[1]*Cf. State v. Salazar*, 945 P.2d 996, 1003-04 (N.M. 1997) (noting that appellate courts may consider "the best interests of [a] decedent's estate, [any] remaining parties, or society" in determining whether an appeal may continue after an appellant's death).

the regularity of Nevada's criminal process presents a live controversy regardless of the appellant's status because, as stated in *Commonwealth v. Walker*, 288 A.2d 741 (Pa. 1972), society has an interest in the constitutionality of the criminal process. Therefore, we deny Stephanie's motion for abatement *ab initio* but conclude that, as Ronnie's properly substituted personal representative, she is entitled to continue his appeal.

*Ronnie's appeal*

Stephanie asserts that the district court erred in denying Ronnie's *Batson* challenge.[2] In Jermaine's appeal, we concluded that a reversal of his judgment of conviction was warranted because the district court's mishandling of Jermaine and Ronnie's *Batson* challenge was intrinsically harmful to the trial's framework. *Brass*, 128 Nev. at ___, 291 P.3d at 149. Ronnie suffered the same harm as Jermaine and is entitled to the same relief. We recognize that the jury found sufficient evidence to convict Ronnie of the conspiracy, kidnapping, and murder charges.

---

[2]Stephanie raises several other issues on appeal. But, in light of our determination regarding the *Batson* challenge, we need not address these additional issues.

However, the jury was not properly constituted, and its decision does not override the constitutional error Ronnie suffered. Accordingly, we reverse the judgment of conviction.[3]

_____, J.
Douglas

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Saitta

---

[3]A remand for further proceedings is unnecessary because Ronnie cannot be retried.

SUPREME COURT
OF
NEVADA

(O) 1947A