**131 Nev., Advance Opinion 52**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| DUSTIN JAMES BARRAL,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 64135 **FILED**<br><br>JUL 23 2015<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |



Appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of sexual assault with a minor under 14 years of age. Eighth Judicial District Court, Clark County; Douglas Smith, Judge.

*Reversed and remanded.*

Las Vegas Defense Group, LLC, and Michael L. Becker and Michael V. Castillo, Las Vegas,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Michelle Y. Jobe, Deputy District Attorney, Clark County,
for Respondent.

BEFORE PARRAGUIRRE, DOUGLAS and CHERRY, JJ.

*OPINION*

By the Court, CHERRY, J.:

In this opinion, we address whether a district court commits structural error when it fails to administer an oath to the jury panel, pursuant to NRS 16.030(5), prior to commencing voir dire. We hold that it does.

## FACTS AND PROCEDURAL HISTORY

Dustin Barral was charged with sexually assaulting a child. His case proceeded to a jury trial. At the beginning of voir dire, both the prosecution and defense explained to the potential jurors the importance of answering their questions honestly. After questioning the first potential juror, the following bench conference took place:

> MR. BECKER [for Barral]: My recollection may not be correct, but I think it's possible that the panel was not sworn in.
>
> THE COURT: They aren't.
>
> MR. BECKER: Okay.
>
> THE COURT: I don't swear them in until the end.
>
> MR. BECKER: Okay. In other words, admonish [the jury] that they are to give truthful answers to all the questions—
>
> MS. FLECK [for the State]: Yeah[.]
>
> MR. CASTILLO [for Barral]: That's fine.
>
>     . . . .
>
> THE COURT: —I won't swear them in.
>
> MR. BECKER: Okay.
>
> THE COURT: Because the ones who are sworn in; that's the panel.
>
> MR. BECKER: Right.
>
>     . . . .
>
> MS. FLECK: But do we have to give them the oath that they have to tell the truth[?]
>
> THE COURT: No.
>
> MS. FLECK: Or no?
>
> THE COURT: No.
>
> MS. FLECK: Okay.

THE COURT: No.

MS. FLECK: Okay.

The court then proceeded with voir dire. The district court clerk swore in the petit jury at the beginning of the second day of trial. After both parties rested and presented closing arguments, the jury deliberated for approximately three hours and returned guilty verdicts on both charges. Following a post-trial motion for acquittal that the court denied, Barral appealed.

## DISCUSSION

Barral claims that the district court committed structural error requiring reversal when it failed to comply with NRS 16.030(5)[1] and administer the oath to the jury venire before voir dire. He argues that the court's error compromised his right to trial by an impartial jury because potential jurors may not have felt obligated to respond truthfully during

---

[1]NRS 16.030(5) dictates:

> Before persons whose names have been drawn are examined as to their qualifications to serve as jurors, the judge or the judge's clerk *shall* administer an oath or affirmation to them in substantially the following form:
>
>> Do you, and each of you, (solemnly swear, or affirm under the pains and penalties of perjury) that you will well and truly answer all questions put to you touching upon your qualifications to serve as jurors in the case now pending before this court (so help you God)?

(Emphasis added.) Although this statute is articulated in the civil practice section of the Nevada Revised Statutes, it applies to criminal proceedings through NRS 175.021(1).

voir dire, as the court did not place them under oath. The State contends that the potential jurors understood that they were required to answer truthfully because the court and counsel for both sides repeatedly stressed to the venire the importance of answering their questions honestly. The State also argues that the court's error did not undermine the framework of the trial.

Whether the district court's actions in this case constituted structural error is a question of law that we review de novo. *See Neder v. United States*, 527 U.S. 1, 7 (1999) ("[W]e have recognized a limited class of fundamental constitutional errors that defy analysis by harmless error standards. Errors of this type are so intrinsically harmful as to require automatic reversal (*i.e.*, affect substantial rights) without regard to their effect on the outcome." (internal citations and quotation marks omitted)); *see also* NRCP 61 ("No error . . . in anything done or omitted by the court . . . is ground for granting a new trial or for setting aside a verdict . . . , unless refusal to take such action appears to the court inconsistent with substantial justice.").

*NRS 16.030(5)*

NRS 16.030(5) does not give the district courts discretion: "the judge or the judge's clerk *shall* administer an oath or affirmation." *Id.* (emphasis added); *see also* NRS 0.025(1)(d) (stating that "'[s]hall' imposes a duty to act"). Thus, we conclude that the district court violated NRS 16.030(5) in the instant case when, according to its apparent general preference, it failed to administer the oath to the venire. Neither party disputes that the district court erred by violating NRS 16.030(5). However, a district court's error will not always entitle a convicted defendant to a new trial. The type of relief, if any, to which a criminal

defendant is entitled following a trial court's violation of NRS 16.030(5) is an issue of first impression for this court.

*Structural error*

Structural errors compromise "the framework of a trial." *Brass v. State*, 128 Nev., Adv. Op. 68, 291 P.3d 145, 148 (2012). Such errors mandate routine reversal because they are "'intrinsically harmful.'" *Id.* (quoting *Cortinas v. State*, 124 Nev. 1013, 1024, 195 P.3d 315, 322 (2008)). The United States Supreme Court has repeatedly held that trial court errors which violate a defendant's Sixth Amendment right to an impartial jury are structural errors that create the probability of prejudice and preclude the need for showing actual prejudice to warrant relief. *See Peters v. Kiff*, 407 U.S. 493, 502 (1972) (stating that "even if there is no showing of actual bias in the tribunal, this Court has held that due process is denied by circumstances that create the likelihood or the appearance of bias," and citing, as examples, *Mayberry v. Pennsylvania*, 400 U.S. 455, 465-66 (1971) (concluding that the same judge who was subject to a trial lawyer's insults that were "apt to strike at the most vulnerable and human qualities of a judge's temperament" was precluded from deciding the criminal contempt charges against the lawyer in order for "justice [to] satisfy the appearance of justice") (internal citations and quotations omitted from parenthetical)); *Estes v. Texas*, 381 U.S. 532, 545 (1965) (reversing a criminal conviction without a showing of the actual prejudice caused by the television broadcast of the trial proceedings because "[t]he conscious or unconscious effect that [broadcasting the trial] may have on [the proceedings] cannot be evaluated, but experience indicates that it is not only possible but highly probable"); *Turner v. Louisiana*, 379 U.S. 466, 467-73 (1965) (reversing a criminal conviction without a showing of

prejudice because two of the sheriff's deputies (who were "key witnesses" at trial and testified regarding disputed facts) were responsible for the sequestered jury over the course of the trial and were continuously in the jurors' company, including transporting the jurors to restaurants for each meal, transporting the jurors to and from their lodgings, conversing with the jurors, and handling errands for the jurors); *In re Murchison*, 349 U.S. 133, 133-34, 136 (1955) (holding that a judge who acted as a "one-man grand jury" could not try the case of two witnesses the judge charged with contempt because "[a] fair trial in a fair tribunal is a basic requirement of due process [and] requires [not only] an absence of actual bias [but the prevention of] even the probability of unfairness"); and *Tumey v. Ohio*, 273 U.S. 510, 531, 535 (1927) (reversing a defendant's criminal conviction by a judge who was "paid for his service only when he convicts the defendant" because "[n]o matter what the evidence was against [the defendant], he had the right to have an impartial judge"). In *Peters*, the Court reasoned that due process demands not only the absence of bias but the appearance of bias as well:

> These principles [that fairness requires not only the absence of actual bias but also preventing even a possibility of bias] compel the conclusion that a State cannot, consistent with due process, subject a defendant to . . . trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States. Illegal and unconstitutional jury selection procedures cast doubt on the integrity of the whole judicial process. They create the appearance of bias in the decision of individual cases, and they increase the risk of actual bias as well.

407 U.S. at 502-03.

The *Peters* Court considered whether the arbitrary exclusion of African Americans from the grand jury invalidated the indictment and subsequent conviction of a Caucasian criminal defendant. *Id.* at 496-97. Peters claimed that (1) the juries that indicted and convicted him were created through constitutional and statutorily prohibited means, (2) the consequence of this error on a single prosecution is indeterminable, and (3) any indictment or conviction returned by a jury selected in violation of the Constitution or federal law must be reversed. *Id.* at 496-97. The Supreme Court agreed with Peters and concluded that neither the indictment nor the conviction against him was valid due to illegal selection procedures used to seat the grand and petit juries. *Id.* at 501.

The *Peters* Court was specifically concerned with protecting the integrity of the jury selection process through procedural safeguards. *Id.* at 501-03. The Court explained that our system of justice "'has always endeavored to prevent *even the probability* of unfairness.'" *Id.* at 502 (emphasis added) (quoting *In re Murchison*, 349 U.S. at 136). The Court further clarified that "[i]t is in the nature of the practices here challenged that proof of actual harm, or lack of harm, is virtually impossible to adduce," because "there is no way to determine" the composition of the jury or the decision it would have rendered if the jury had been selected pursuant to constitutional mandates. *Peters*, 407 U.S. at 504 (emphasis added).

Based on the Supreme Court's reasoning, *see id.* at 498-505, we are persuaded that a defendant in a criminal case is denied due process whenever jury selection procedures do not strictly comport with the laws intended to preserve the integrity of the judicial process. An indictment or a conviction resulting from an improperly selected jury must be reversed.

A fair tribunal is an elementary prerequisite to due process, so we will not condone any deviation from constitutionally or statutorily prescribed procedures for jury selection. *Cf. id.* at 501. Accordingly, we hold that a district court commits structural error when it fails to administer the oath to potential jurors pursuant to NRS 16.030(5). As we have concluded that failing to swear the potential jurors is a structural error, it is reversible *per se*; a defendant need not prove prejudice to obtain relief.

Therefore, we reverse Barral's convictions for sexual assault of a minor under 14 years of age and remand this matter to the district court for a new trial. Because we reverse Barral's convictions on the grounds that the district court committed structural error in the jury selection process, we need not address the remaining issues in his appeal.

_____, J.
Cherry

We concur:

_____, J.
Parraguirre

_____, J.
Douglas