**134 Nev., Advance Opinion 104**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

JAMES MARLIN COOPER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 72091

**FILED**

DEC 27 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of battery constituting domestic violence and two counts of child abuse, neglect, or endangerment. Eighth Judicial District Court, Clark County; David B. Barker, Senior Judge.[1]

*Reversed and remanded.*

Howard Brooks, Public Defender, and Sharon G. Dickinson, Deputy Public Defender, Clark County,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and William C. Rowles, Deputy District Attorney, Clark County,
for Respondent.

BEFORE CHERRY, PARRAGUIRRE and STIGLICH, JJ.

---

[1]Judge Jessie Elizabeth Walsh presided over the trial in this matter, and Senior Judge David Barker signed the judgment of conviction.

SUPREME COURT
OF
NEVADA

(O) 1947A

18-910515

## OPINION

By the Court, STIGLICH, J.:

The use of a peremptory challenge to remove a potential juror on the basis of race is a violation of the United States Constitution. The Supreme Court of the United States has outlined a three-part test to help courts determine whether a peremptory challenge is improperly based on race, *see Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986), and this court has adopted and utilized this test numerous times. In this opinion, we consider the first step of the test, specifically what evidence satisfies the prima facie showing of race-based discrimination. Because we conclude the district court clearly erred when it found that a prima facie showing was not made, we reverse and remand for a new trial.

## FACTS

The State charged appellant James Cooper with two counts of child abuse, neglect, or endangerment, and one count each of battery constituting domestic violence committed by strangulation and battery constituting domestic violence. The charges stemmed from Cooper's conduct at an apartment he shared with the victim and her two children.

During jury selection, and after for-cause challenges were resolved, the State exercised two of its five peremptory challenges to remove prospective Juror No. 217 and prospective Juror No. 274, both African-American women, the same race as Cooper. At the time the State exercised these strikes, the venire included 23 prospective jurors, 3 of whom were African American. Cooper objected to the State's challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), alleging that the two prospective

SUPREME COURT
OF
NEVADA

(O) 1947A

jurors indicated they could be fair and that circumstances evinced a pattern of strikes against African Americans. The State responded that two African-American males were excused for cause and that Cooper had not made out a prima facie case of discrimination. The State argued that it only had to provide its reason for each of the strikes if the district court found a prima face showing of discrimination. The district court indicated that it did not think Cooper could make the prima facie showing, that it believed Cooper's concern was with the racial make-up of the entire venire, and that it could think of many reasons why the State would want to strike either of the two prospective jurors. Without a more specific analysis from Cooper, the district court denied the *Batson* challenge.

## *DISCUSSION*

The Equal Protection Clause of the United States Constitution prohibits any party from utilizing a peremptory challenge to strike a juror based on race. *See Diomampo v. State*, 124 Nev. 414, 422, 185 P.3d 1031, 1036 (2008). When an objection has been made to the alleged use of a race-based peremptory challenge, the district court must resolve the objection utilizing a three-part test. *See Batson*, 476 U.S. at 93-100; *Kaczmarek v. State*, 120 Nev. 314, 332-35, 91 P.3d 16, 28-30 (2004). "First, the opponent of the peremptory strike must make a prima facie showing that a peremptory challenge has been exercised on the basis of race." *Williams v. State*, 134 Nev., Adv. Op. 83, 429 P.3d 301, 305 (2018) (internal quotation marks omitted). "Second, if that showing has been made, the proponent of the peremptory strike must present a race-neutral explanation for the strike." *Id.* at 306. The third step consists of the district court "hear[ing]

argument and determin[ing] whether the opponent of the peremptory strike has proven purposeful discrimination." *Id.* We afford great deference to the district court's findings regarding discriminatory intent, and we will not reverse "unless clearly erroneous."[2] *Kaczmarek,* 120 Nev. at 334, 91 P.3d at 30.

The case before us involves the first step—the opponent's prima facie showing that the challenge was race based. "To establish a prima facie case under step one, the opponent of the strike must show that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Watson v. State,* 130 Nev. 764, 775, 335 P.3d 157, 166 (2014). We have held that the standard for establishing a prima facie case "is not onerous and does not require the opponent of the strike to meet his or her ultimate burden of proof under *Batson.*" *Id.* "Rather, the opponent of the strike must provide sufficient evidence to permit the trier of fact to draw an inference that discrimination has occurred." *Id.* (internal quotation marks omitted). And "an inference" is "a conclusion reached by considering other facts and deducing a logical consequence from them." *Id.* (internal quotation marks omitted).

---

[2]Cooper argues that this court should review the district court's prima facie determination de novo. However, we decline to consider this argument as it was not raised until Cooper's reply brief. *See Francis v. Wynn Las Vegas,* 127 Nev. 657, 671 n.7, 262 P.3d 705, 715 n.7 (2011) (stating that arguments raised for the first time in an appellant's reply brief need not be considered); *see also Watson v. State,* 130 Nev. 764, 775 n.2, 335 P.3d 157, 166 n.2 (2014) (acknowledging split of authority as to the standard of review for step one but declining to address the standard of review because the parties failed to raise the issue).

There is no one way to satisfy step one. The question is whether there is evidence, other than the fact that a challenge was used to strike a member of a cognizable group, establishing an inference of discriminatory purpose to satisfy the burden of this first step. *See Watson*, 130 Nev. at 775-76, 335 P.3d at 166. "For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination." *Batson*, 476 U.S. at 97. But a pattern is not the only way to satisfy step one. *Watson*, 130 Nev. at 775-76, 335 P.3d at 166. Other evidence that may be sufficient includes "the disproportionate effect of peremptory strikes, the nature of the proponent's questions and statements during voir dire, disparate treatment of members of the targeted group, and whether the case itself is sensitive to bias." *Id.* at 776, 335 P.3d at 167.

Both Cooper and the State agree that African Americans made up 13.04 percent of the venire (3 of 23). The State used 40 percent of its peremptory challenges (2 of 5) to remove 67 percent of the African Americans (2 of 3). *See Watson*, 130 Nev. at 778, 335 P.3d at 168 (approving of a method that compares the percentage of "peremptory challenges used against targeted-group members with the percentage of targeted-group members in the venire"). While numbers alone may not give rise to an inference of discriminatory purpose, we conclude that the percentage of peremptory challenges used against African Americans in this case was disproportionate to the percentage of African Americans in the venire such that an *inference* of purposeful discrimination was shown in this case. *Cf. Fernandez v. Roe*, 286 F.3d 1073, 1078 (9th Cir. 2002) (stating prima facie case established where prosecutor used 29 percent of peremptory challenges

(O) 1947A

to remove 57 percent of a targeted group that only comprised 12 percent of the venire); *Turner v. Marshall*, 63 F.3d 807, 813-14 (9th Cir. 1995) (holding prima facie case established where prosecutor used 56 percent of peremptory challenges to completely remove targeted group that only comprised 30 percent of the venire), *overruled in part on other grounds by Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999); *see also Shirley v. Yates*, 807 F.3d 1090, 1101 (9th Cir. 2015) ("The fact that a prosecutor peremptorily strikes all or most veniremembers of the defendant's race—as was the case here—is often sufficient on its own to make a *prima facie* case at [s]tep [o]ne."). The State's use of two challenges to strike members of a cognizable group along with the composition of the venire before and after the strikes suggest not only a pattern but a disproportionate effect resulting from the challenges. Thus, the totality of the circumstances evinces an inference of purposeful discrimination. We reach this conclusion particularly in light of the fact that the burden for step one is not intended to be onerous or to be clearly demonstrative of purposeful discrimination. *See Watson*, 130 Nev. at 775, 335 P.3d at 166. Therefore, the district court clearly erred when it found that Cooper had not satisfied step one of *Batson*.

Because the district court concluded that Cooper had not met his burden under step one, the State correctly averred below that it was not required to provide an explanation for the peremptory strikes. *See Watson*, 130 Nev. at 779-80, 335 P.3d at 169. But that choice has consequences if a reviewing court determines that the district court erred at step one—the record may be inadequate for the reviewing court to consider step two of the *Batson* analysis. *Cf. Kaczmarek*, 120 Nev. at 334-35, 91 P.3d at 30

(addressing steps two and three even though the district court did not adequately articulate its analysis where the record included the State's reasons for exercising the peremptory challenges and did not demonstrate any discriminatory motives). Without a record of the State's reasons for the peremptory strikes, we are left to speculate as to any race-neutral explanations for striking the two African-American women from the venire. While the district court said it could "think of a whole host of reasons" for the State wanting to strike either of the two African-American women, it did not articulate any of them.[3] More importantly, judicial speculation about the State's reasons is inconsistent with the *Batson* framework. As the Supreme Court has explained, "The *Batson* framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process. The inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained asking a simple question." *Johnson v. California*, 545 U.S. 162, 172 (2005) (considering a case where the trial court did not seek a race-neutral explanation from the prosecution but instead explained that its own examination of the record was enough to convince the court that the strikes

---

[3]We note that a district court's comment about possible justifications for a peremptory challenge, without input from the prosecution, could be viewed as the court resolving the *Batson* objection before all evidence and argument are presented. *Cf. Brass v. State*, 128 Nev. 748, 753 n.4, 291 P.3d 145, 149 n.4 (2012) (noting this court's concern that the district court's dismissal of a prospective juror before conducting a *Batson* hearing could be indicative of judicial bias as it may show the district court has closed its mind to the presentation of evidence).

could be supported with race-neutral explanations). The Court has warned against "the imprecision of relying on judicial speculation to resolve plausible claims of discrimination." *Id.* at 173. Thus, when a *Batson* objection is erroneously rejected at step one and the record does not clearly reflect the State's reasons for its peremptory strikes, whether because the district court did not inquire into them after ruling against the defendant on step one or because the State declined to provide its reasons unless the district court first made a finding of a prima facie case under step one, this court cannot proceed to steps two and three for the first time on appeal.[4]

The silence as to the State's reasons for exercising the two challenged peremptory strikes is particularly problematic in this case because the State posed a question with race-based implications during voir dire: it asked whether any of the veniremembers had strong opinions about the Black Lives Matter movement.[5] The question had, at best, minimal relevance to the circumstances of this case.[6] *See Valdez v. People*, 966 P.2d 587, 595 (Colo. 1998) (chastising the prosecutor's reference to the O.J.

---

[4]As we indicated in *Watson*, when the district court determines that the defendant has not made the prima facie showing required by *Batson*'s step one, it can be a good idea for the district court to inquire into the State's race-neutral reasons to ensure that there is a complete record for appellate review. *See* 130 Nev. at 779-80, 335 P.3d at 169 (stating step one of *Baston* was not rendered moot where a district court asked the State to articulate its reasons for the strike "out of an abundance of caution after the court had determined that [the defendant] failed to make a prima facie case").

[5]The Black Lives Matter movement "is a social movement" established "in response to the perceived mistreatment of African-American citizens by law enforcement officers." *Doe v. Mckesson*, 272 F. Supp. 3d 841, 849 (M.D. La. 2017).

[6]We do not conclude that this type of question could never be relevant. Rather, we do not perceive its relevance given the facts in *this* case.

SUPREME COURT
OF
NEVADA

(O) 1947A

Simpson case and questions to prospective jurors regarding race, made during voir dire, in part because the "case did not have any apparent racial issues"). The question did not examine an issue apparent in this case, and the State fails to credibly explain how this question helped expose whether a prospective juror could "consider and decide the facts impartially and conscientiously apply the law as charged by the court." *Johnson v. State*, 122 Nev. 1344, 1354, 148 P.3d 767, 774 (2006) (discussing the purpose of voir dire). And we are concerned that by questioning a veniremember's support for social justice movements with indisputable racial undertones, the person asking the question believes that a "certain, cognizable racial group of jurors would be unable to be impartial, an assumption forbidden by the Equal Protection Clause." *Valdez*, 966 P.2d at 595; *see also Batson*, 476 U.S. at 89 ("[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."). The Black Lives Matter question, coupled with the State's use of 40 percent of its peremptory challenges (2 of 5) to remove 67 percent (2 of 3) of the veniremembers in a particular cognizable group that made up just over 13 percent of the venire, could support a finding of purposeful discrimination.

Having concluded that the district court clearly erred when it terminated the *Batson* analysis at step one and that the record does not clearly support the denial of Cooper's objection, we reverse the judgment of conviction and remand to the district court for a new trial.[7] *See Diomampo*,

---

[7]Cooper raises additional arguments on appeal regarding alleged error in the proceedings below. We have considered and reject his claim

SUPREME COURT
OF
NEVADA

(O) 1947A

124 Nev. at 423, 185 P.3d at 1037 (observing that *Batson* error is structural).

_____ , J.
Stiglich

We concur:

_____ , J.
Cherry

_____ , J.
Parraguirre

---

that insufficient evidence supports his convictions. And given our disposition, we do not reach the merits of his remaining claims.

SUPREME COURT
OF
NEVADA

(O) 1947A