# IN THE SUPREME COURT OF THE STATE OF NEVADA

TIMOTHY YANDELL,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 78259

**FILED**

JUL 27 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK


## ORDER OF AFFIRMANCE

This is an appeal from a judgment pursuant to a jury verdict convicting Timothy Yandell on two counts—robbery with a deadly weapon (NRS 200.380; NRS 193.165), and robbery with a deadly weapon, victim over the age of 60 (NRS 200.380; NRS 193.165; NRS 193.167). Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge. The convictions stem from a single course of conduct—Yandell left a Napa Auto Parts store with unpaid-for merchandise, and, when overtaken in the parking lot by two store employees, lifted his shirt to display what appeared to be a handgun in the waistband of his pants. The employees retreated and Yandell fled to a nearby Burger King, where police arrested him. Yandell raises a variety of challenges to his convictions, as discussed herein.

The most substantial of Yandell's claims is his challenge based on *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), which forbids a prosecutor from striking potential jurors solely on account of their race and/or gender. *See also McNair v. State*, 108 Nev. 53, 61, 825 P.2d 571, 577 (1992). Our review of such claims is "highly deferential." *See Flowers v. Mississippi*, ___ U.S. ___, ___, 139 S. Ct. 2228, 2244 (2019); *Diomampo v. State*, 124 Nev. 414, 422-23, 185 P.3d 1031, 1036-37 (2008) ("In reviewing a *Batson* challenge, 'the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded

great deference on appeal.'" (quoting *Walker v. State,* 113 Nev. 853, 867-68, 944 P.2d 762, 771-72 (1997))).

Here, the State used 40 percent of its peremptory strikes to remove 67 percent (2 of 3) of the potential black jurors, percentages likely sufficiently disproportionate to allow "an *inference* of purposeful discrimination." *See Cooper v. State,* 134 Nev. 860, 862, 432 P.3d 202, 205 (2018) (prima facie case for *Batson* where "[t]he State used 40 percent of its peremptory challenges (2 of 5) to remove 67 percent of the African Americans (2 of 3)"). This is particularly so given the low bar under *Batson*'s first prong. *See id.,* 134 Nev. at 862, 432 P.3d at 204-06 (noting that the standard for establishing a prima facie case "is not onerous").[1]  But the State offered plausible, race-neutral reasons for the two strikes at issue— one venireperson had previously served on a hung jury; the other posed a potential to favor an adverse state witness who would testify with the aid of a sign-language interpreter, because that venireperson's daughter worked with the hearing-impaired community.

Moreover, the State's conduct toward a third black venireperson—whom the State did not strike—belies Yandell's suggestion that these proffered reasons were pretextual. That venireperson faced the State's direct questioning purely by chance (after the prosecutor asked a juror holding the microphone "to pass it to your left or forward or however you want"). And the State asked rehabilitative questions of that

---

[1]Yandell cites to *Flowers,* 139 S. Ct. 2228, and suggests that supposed evidence of historical discrimination by the Clark County Prosecutor's Office should also be used to establish a pattern of discrimination here. However, Yandell does not appear to have raised these specific grounds below, and thus our appellate consideration is precluded. *Pantano v. State,* 122 Nev. 782, 795, 138 P.3d 477, 486 (2006).

venireperson, rather than striking her, when she indicated a potential bias in favor of the defense. [8 AA 487.] The State's proffered race-neutral reasons and this record satisfied the district court, and, in light of our deferential standard, we find no error here.

Yandell next argues that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), a claim which we review *de novo*. *Lay v. State*, 116 Nev. 1185, 1193, 14 P.3d 1256, 1262 (2000). Yandell's *Brady* claim is an unusual one. He bases it on testimony given by the State's witness Andrea Smith, which should have been entirely predictable to Yandell, given that (1) Yandell received Smith's voluntary statement to law enforcement, and (2) the contents of that statement mirrored the testimony Smith gave at trial. Specifically, both to law enforcement and on the stand, Smith indicated that he witnessed an individual broadly matching Yandell's description steal part packs from Napa Auto Parts, and that he believed the police had wrongly arrested two African American suspects for that crime. [3 AA 692] Yandell apparently anticipated something more explosive during the State's direct examination of Smith, based on the State's email to his defense team stating that Smith "does not think [Yandell] is the person who robbed the store and that the cops and victims must have misidentified the wrong guy." [4 AA 996]

But *Brady* does not require that the State assist Yandell in presenting his case. *See United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990). Rather, it was Yandell's responsibility to use Smith's equivocation—which the State properly revealed to him—to "attack the reliability, thoroughness, and good faith of the police investigation or to impeach the credibility of the State's witnesses." *Lay v. State*, 116 Nev. 1185, 1194, 14 P.3d 1256, 1262 (2000). And indeed, on cross-examination,

Yandell elicited from Smith that "at some point" he had told the State that the cops had the wrong person. Thus, the State provided Yandell with material information to cross-examine Smith, Yandell used that information effectively at trial, and the district court did not err by denying Yandell's *Brady* claim. *See Roberts v. State*, 110 Nev. 1121, 1128, 881 P.2d 1, 5 (1994), *overruled on other grounds by Foster v. State*, 116 Nev. 1088, 13 P.3d 61 (2000).

We likewise find meritless Yandell's two additional challenges stemming from the district court's evidentiary rulings—the district court did not abuse its discretion by either (1) permitting limited testimony from a Burger King regional IT manager describing Burger King security footage as it played for the jury, or (2) refusing to play police body camera footage in order to refresh a witness's memory.

As to the first, Yandell's argument that the Best Evidence Rule was somehow violated falls entirely flat. The original security footage was, in fact, admitted and played for the jury at the time of the testimony in question. *See* NRS 52.235; NRS 52.285 (putting certain limitations on witness testimony where there was a "nonproduction" of the original). Nor did the brief exchange between the State and its witness—wherein the State asked, "Sir, did we just see an individual walk into this store with some packages in his hand, red shirt, and backpack?" and the witness replied, "Yes." [3 AA 552]—inappropriately "contaminate" the jury. The lay opinion offered by the regional IT manager did not come from a law enforcement officer and did not specifically identify Yandell as present on the tape. *Cf. United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993), *as amended* (Aug. 19, 1993) (contaminating effect where a police officer identified a figure on a bank security tape as the defendant); *Ruffin*

*v. State*, 549 So. 2d 250, 251 (Fla. Dist. Ct. App. 1989) (three police officers identified the defendant as a figure on a tape, despite not being present at the events shown on the tape).

Second, Yandell objects to the district court's refusal to play police body camera footage for the jury in which one of the victim-witnesses stated that similar items had previously been stolen from the store. On the stand, the witness denied ever making that statement; though whether Yandell suggests the footage was therefore relevant for impeachment or to refresh the witness's recollection is unclear. In either case, the district court did not abuse its discretion by refusing to play this extrinsic evidence for the jury—that an unidentified person allegedly took similar items from the store a week prior is entirely collateral to the central issues in the case. *See Lobato v. State*, 120 Nev. 512, 522 n.12, 96 P.3d 765, 773 n.12 (2004) (noting "two methods by which extrinsic evidence of prior inconsistent statement is non-collateral: (1) if the matter is itself relevant to a fact of consequence on the historical merits of the case and (2) if the extrinsic evidence relates to a linchpin fact of the case." (internal quotations omitted)).

Next, Yandell argues that his conviction for count 2 (robbery with a deadly weapon, NRS 200.380; NRS 193.165), was improper, given his conviction on count 1 (robbery with a deadly weapon, victim over the age of 60, NRS 200.380; NRS 193.165; NRS 193.167). Specifically, Yandell reasons that because the State only alleged that he exhibited one show of force—by lifting his shirt to reveal a fake gun and directing one statement at both employees—there was only one "unit of prosecution" for robbery under NRS 200.380. Though Yandell couches his argument in constitutional terms, identifying the "unit of prosecution" in his case is actually a question of statutory interpretation. *Jackson v. State*, 128 Nev.

598, 612, 291 P.3d 1274, 1283 (2012); *see also* Akhil Reed Amar, *Double Jeopardy Law Made Simple*, 106 Yale L.J. 1807, 1818 (1997) ("[T]he Double Jeopardy Clause imposes no limits on how the legislature may carve up conduct into discrete legal offense units."). Here, similar to *Klein v. State*, 105 Nev. 880, 885, 784 P.2d 970, 973–74 (1989), conviction of two counts of robbery under NRS 200.380 was proper because both victims had a possessory interest in the power inverters. ~~Thus, the heart of Yandell's argument is that the state lacked probable cause to bring two robbery charges under the statute, based on its proper interpretation. We therefore lack jurisdiction to decide this issue—Yandell should have raised it in the district court in a petition for habeas corpus within "21 days after [his] first appearance . . . in the district court," NRS 34.700(1)(a); instead, he filed a motion to dismiss 48 days after his first appearance. *Sheriff, Clark Cty. v. Jensen*, 95 Nev. 595, 596, 600 P.2d 222, 223 (1979) (holding that a noncompliant petition is "neither cognizable below nor reviewable here").~~

Stricken and amended per 10/23/20 order.

Yandell further claims that the State offered insufficient evidence to support his conviction, but we disagree. On more than one occasion, both victims of the robbery independently identified Yandell as the individual who (1) walked out of the Napa Auto Parts store with unpaid merchandise, (2) brandished what they believed to be a gun at them, and (3) left with that merchandise after they retreated in fear. A Burger King employee identified Yandell as having been in the store just prior to his arrest, acting suspiciously and holding packages. The arresting officer confirmed Yandell's "nervous" presence in that Burger King, and further testified that she found a black backpack with a fake gun and the stolen merchandise at the entrance. Even further, the State's forensic expert testified that it was highly likely that the DNA on that fake gun belonged to Yandell. To the extent weak points or inconsistencies existed in the State's case, it was the jury's function to consider them. We view the State's proffer in the light most favorable to the prosecution, *Origel-Candido v.*

*State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998), and find that a rational trier of fact could have found the essential elements of the crime met beyond a reasonable doubt. *Milton v. State*, 111 Nev. 1487, 1491, 908 P.2d 684, 686-87 (1995). And given the breadth of this evidence, we further reject Yandell's arguments regarding allegedly improper comments by the prosecutor. *Valdez v. State*, 124 Nev. 1172, 1189, 196 P.3d 465, 476 (2008) (holding that improper comments are reversible error only where they "substantially affect the verdict").

Yandell also challenges several district court rulings rejecting his proposed jury instructions, which we review for an abuse of discretion. *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). With regard to the jury instructions at issue,[2] we emphasize, again, that "the defense has the right to have the jury instructed on its theory of the case, . . . as disclosed by the evidence, no matter how weak or incredible that evidence

---

[2]Proposed defense instruction number 4 read: "Timothy Yandell, as part of his general denial of guilt, contends that the State has not presented sufficient reliable evidence to establish beyond a reasonable doubt that he is the person who committed the alleged offense. The burden of proving the identity of the person who committed the crime is upon the state. For you to find defendant guilty, the state must prove beyond a reasonable doubt that he is the person who committed the crime. Defendant has neither the burden nor the duty to show that the crime, if committed, was committed by someone else, or to prove the identity of that person. You must determine, therefore, not only whether the state has proved each and every element of the offense charged beyond a reasonable doubt, but also whether the State has proved beyond a reasonable doubt that the defendant is the person who committed it."

Proposed defense instruction number 5 stated: "One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The prosecution has the burden of proving the identity of the perpetrator beyond a reasonable doubt."

may be." *Honea v. State*, 136 Nev., Adv. Op. 32, ___ P.3d ___, ___ (June 18, 2020) (omission in original) (quoting *Crawford*, 121 Nev. at 751, 121 P.3d at 586). Accordingly, "specific jury instructions that remind jurors that they may not convict the defendant if proof of a particular element is lacking should be given upon request." *Crawford*, 121 Nev. at 753, 121 P.3d at 588. The rejected instructions are in such a vein. Thus, to the extent the district court disagreed with the wording of these proposed instructions, it should have "assist[ed] the parties in crafting the required instructions or . . . complete[d] the instructions *sua sponte*." *Crawford*, 121 Nev. at 754-55, 121 P.3d at 589.

Rejecting the instructions outright was therefore an abuse of discretion. But we hold that the error was harmless. First, the jury was provided with instructions that covered the subject matter of the rejected instructions (though admittedly more generally than Yandell may have preferred). Second, the evidence presented in this case, as discussed in greater detail above, established Yandell's identity as the perpetrator beyond a reasonable doubt. No reasonable jury would have found otherwise. *See Crawford*, 121 Nev. 744, 756–57, 121 P.3d 582, 590 (improper rejection of defense jury instruction was harmless error where correct instructions were given and overwhelming evidence established the element that the proposed defense instruction discussed).

Yandell also challenges the district court's permitting of a verdict form listing "guilty" before "not guilty." But, "[w]e have found no case, nor has appellant cited any, adopting appellant's position that the 'not guilty' opinion must be listed before the 'guilty' option on a verdict sheet." *Davis v. State*, 7 A.3d 690, 707 (Md. 2010) (collecting cases). And we therefore reject this argument given its lack of supporting authority.

*Browning v. State*, 120 Nev. 347, 354, 91 P.3d 39, 45 (2004). (proponent of an argument must present relevant authority).

Finally, Yandell argues that cumulative error warrants reversal of his verdict, but the only error we noted was harmless; there is nothing to cumulate.[3] Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Gibbons

_____, J.
Stiglich

SILVER, J., concurring:

I concur in the result only.

_____, J.
Silver

cc:   Hon. Michelle Leavitt, District Judge
     Clark County Public Defender
     Attorney General/Carson City
     Clark County District Attorney
     Eighth District Court Clerk

---

[3]To the extent Yandell purports to have raised any additional arguments via this briefing, we likewise find them without merit.